IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KERRY RAE HOLDEN,                )
                                 )
        Plaintiff,                )
                                 )
                                 )   CIV-12-828-W
v.                               )
                                 )
CAROLYN W. COLVIN,               )
  Acting Commissioner of Social  )
  Security Administration[1],    )
                                 )
        Defendant.                )

# REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

---

[1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this action. No further action need be taken to continue this action. 42 U.S.C. § 405(g).

I. Background

Plaintiff filed her application for disability benefits in August 2005, alleging that she became disabled on July 11, 2005, due to a whiplash injury from a car accident. (TR64-66, 77). At that time, Plaintiff was a resident of the State of Washington, and she had previously been treated for asthma, migraine headaches, and cervicalgia. (TR 121). Following the accident, Plaintiff was treated for musculoskeletal strain and prescribed muscle relaxant and anti-inflammatory medications and advised not to bend or stoop for one week. (TR 125, 127). She underwent some physical therapy in August 2005. (TR 118, 119, 125).

In November 2005, MRI testing of Plaintiff's thoracic spine was normal. (TR 141). and MRI testing of Plaintiff's cervical spine showed minimal disc bulging at one level without focal disk protrusion or spinal or foraminal stenosis. (TR 143). In December 2005, Plaintiff exhibited some decreased range of motion in her cervical spine but no midline tenderness and pain with side bending, according to the office note of an examining osteopathic physician, Dr. Brennan. (TR 166). She had full range of motion in her upper extremities. (TR 166). Dr. Brennan did not think the small disk bulge shown on her cervical MRI testing was contributing to her pain symptoms, and she exhibited no radicular symptoms or neurological deficits. (TR 166). No treatment other than cervical exercises and chiropractic treatment was recommended. (TR 167).

Plaintiff had a high school education and previous jobs as a home health attendant, emission tester, receptionist, and teacher's aide. (TR 78).

In March 2006, Plaintiff stated that she had additional "left arm and shoulder"

problems beginning in February 2006. (TR 99). In March 2006, an examining physician, Dr. Powers, noted that Plaintiff exhibited limited neck range of motion, full strength, no loss of sensation, intact toe/heel walking, negative straight leg raising test, and she was assessed with cervical/lumbar strain from a motor vehicle accident. (TR 163-164).

Plaintiff moved to Oklahoma in 2006, and she was treated intermittently between June 2006 and November 2008 by Dr. Kang, an osteopathic doctor. Dr. Kang's office notes indicate that Plaintiff was prescribed medications for thoracic, cervical, and lumbar strain/sprain and chronic pain syndrome. (TR 172-174). In March 2007, Dr. Kang noted a diagnostic assessment of severe degenerative disc disease for which medications were prescribed. (TR 293). There are no further records of treatment of Plaintiff for Dr. Kang for back, neck, shoulder, or arm pain. In May 2008, Plaintiff complained of rib/ abdominal pain. (TR 291). She underwent a gallbladder ultrasound and hepatobiliary scan, both of which were negative. (TR 289-290). In November 2008, Dr. Kang treated Plaintiff with antibiotics for bronchitis. (TR 288). Dr. Kang provided medical source statements in 2007 and 2009 concerning Plaintiff's work-related functional abilities. (TR 176-179, 284-287).

Plaintiff's application was denied. An administrative hearing was conducted at Plaintiff's request in April 2007 before Administrative Law Judge Engel. (TR 184-228). In June 2007, Administrative Law Judge Engel issued a decision finding Plaintiff was not disabled from July 11, 2005 through the date of the decision. (TR 12-20). Plaintiff appealed the final decision to this Court, and the decision was reversed and remanded for further administrative proceedings. (TR 250-257, 258-259).

A supplemental administrative hearing was conducted before Administrative Law Judge Bennett in February 2009. (TR 294-321). Administrative Law Judge Bennett issued an unfavorable decision in July 2009. (TR 232-239). The Commissioner moved to reverse the decision and remand the case for further administrative proceedings, and a Judgment and Order of Remand were issued by this Court on August 4, 2010. (TR 334-335).

A second supplemental hearing was conducted before Administrative Law Judge Parrish ("ALJ") on February 15, 2012, at which Plaintiff and a vocational expert ("VE") testified. (TR 383-406). In April 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act from July 11, 2005 through December 31, 2010, the date she was last insured for Title II benefits. (TR 325-332).

Following the agency's well-established sequential evaluation procedure, the ALJ found at step one that Plaintiff's insured status expired on December 31, 2010, and that Plaintiff had not engaged in substantial gainful activity from July 11, 2005, the date on which she alleged her disability began, through December 31, 2010. At step two, the ALJ found that Plaintiff had a severe impairment due to degenerative disc disease. At step three, the ALJ found that Plaintiff's impairment did not medically satisfy or equal the criteria for Listing 1.04 in 20 C.F.R. pt. 404, subpt. P, app. 1. At the fourth step, the ALJ found that before her insured status expired Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level except that she can only occasionally stoop, crouch, crawl, or climb ropes or ladders. In connection with this RFC finding, the ALJ considered the credibility of Plaintiff's subjective complaints of disabling pain and the medical source

statement of Dr. Kang. Relying on the VE's testimony regarding the exertional requirements of Plaintiff's previous work and the availability of work for an individual with Plaintiff's vocational characteristics and RFC for work, the ALJ found that Plaintiff was not disabled as she retained the capacity to perform her previous jobs as an emission inspector, cashier, teacher's aide, and receptionist.

The Appeals Council denied Plaintiff's request for review of this step four determination, and therefore the ALJ's April 2012 decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the Commissioner's final decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

5

III. Evaluation of Treating Doctor's Opinion

Plaintiff contends that the ALJ erred in evaluating the opinions of Plaintiff's treating doctor, Dr. Kang. The Commissioner responds that no error occurred in the ALJ's evaluation of Dr. Kang's opinions.

When an ALJ considers the opinion of a disability claimant's treating physician, the ALJ must follow a specific procedure in analyzing the medical opinion. Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. In that event, the ALJ must determine what weight, if any, should be given to the opinion by considering such factors as:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1031 (quotation omitted). See 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "must give good reasons ... for the weight assigned to a treating physician's opinion" that are

"sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." Watkins, 350 F.3d at 1300 (quotations omitted). The ALJ must also set forth specific, legitimate reasons for completely rejecting an opinion of an acceptable treating source. Id. at 1301.

The ALJ recognized that Dr. Kang had provided an opinion concerning Plaintiff's functional abilities. Dr. Kang assessed Plaintiff's physical functioning in 2007 and again in 2009. (TR 176-179, 284-287). The ALJ appropriately focused on the more recent opinion, which presumably encompassed the period from July 2005, when he opined Plaintiff became disabled, to the date of the opinion, January 28, 2009. (TR 287).

In this medical source statement, Dr. Kang states that he diagnosed Plaintiff with severe degenerative disc disease and chronic obstructive pulmonary disease and that her symptoms included constant pain in her neck and back with any activities. (TR 284). He noted clinical findings and objective signs of "cervical and thoracic and lumbar spine markedly restricted range of motions and decreased strength." (TR 284). Dr. Kang noted that treatment of Plaintiff's impairments consisted of "pain medications" and a muscle relaxant and asthma medications. (TR 285). With respect to Plaintiff's specific functional limitations, Dr. Kang circled responses on the form indicating that Plaintiff could sit for 10 minutes or 1 hour, stand for 5 minutes or one hour, sit for 40 minutes in an 8-hour workday. He also underlined "[l]ess than 2 hours" in an 8-hour workday but did not indicate if this assessment was related to Plaintiff's ability to sit or stand or both sitting and standing. (TR 285). He also assessed Plaintiff as being capable of no bending or twisting, "[n]ever" lifting less than 10

7

pounds, needing breaks to lie down four times a day for "[n]o" length of time, all of which Dr. Kang opined made her "unemployable due to her medical conditions." (TR 286).

The ALJ discounted Dr. Kang's opinion for three reasons. The ALJ found the opinion was internally inconsistent and was also inconsistent with Dr. Kang's own treatment notes. See 20 C.F.R. § 404.1527(c)(4); Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007)("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence.")(quotation omitted). The ALJ further found that the opinion was not consistent with the record as a whole.

Preliminarily, Plaintiff repeatedly asks the Court to return to the findings set forth in a Report and Recommendation in which the Magistrate Judge reviewed the first administrative decision by ALJ Engel and also to consider the earlier administrative decisions made by ALJ Engel and ALJ Bennett. However, the only decision before the Court is the final decision of the Commissioner, and that decision is embodied in the ALJ's April 2012 determination. See 42 U.S.C. § 405(g)(stating that federal courts are limited to reviewing the Commissioner's final decision); 20 C.F.R. § 404.984(a)("[W]hen a case is remanded by a Federal court for further consideration, the decision of the [ALJ] will become the final decision of the Commissioner after remand . . . ."); O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994)(when appeals council denies review, ALJ's decision becomes Commissioner's final decision).

The ALJ reasoned that Dr. Kang's opinion was not entitled to controlling weight and was entitled to only "little weight" because, first, Dr. Kang did not explain the internal

8

inconsistencies concerning his assessments of Plaintiff's ability to sit and stand, which the ALJ stated "ma[de] it difficult to understand what limitations he is suggesting." (TR 330). Plaintiff suggests that if the ALJ could not understand the functional assessment included in the opinion the ALJ should have recontacted the physician. Effective March 26, 2012, the regulations provide that if an ALJ determines there is insufficient evidence to determine disability the ALJ "may recontact [a] treating physician, psychologist, or other medical source," "request additional existing records" or seek further evidence from another source, including the claimant or a consultative examiner. 20 C.F.R. § 404.1520b. The ALJ did not find there was insufficient evidence to determine whether or not Plaintiff was disabled, and the ALJ was not obligated to recontact Dr. Kang to explain the findings included in his medical source statement.

Second, the ALJ reasoned that "Dr. Kang's records and other medical records indicate subjective allegations of pain, but objective evidence, including that in Dr. Kang's records show few findings that would suggest such severe limitations. Such severe limitations are not supported by clinical findings, MRI, x-ray or other testing." (TR 330). Plaintiff contends that Dr. Kang's office notes do provide support for his functional assessment. However, Plaintiff merely lists page numbers and states that Dr. Kang found Plaintiff to exhibit "decreased spinal mobility, muscle spasms, weakness, and constant pain." (TR 19).

The record shows that on two occasions, in July 2006 and in March 2007, Dr. Kang noted in a conclusory manner that Plaintiff showed "markedly restricted ROM and paravertebral muscle spasm" in her spinal areas. (TR 173, 293). In other notes of his

9

treatment of Plaintiff in 2006, 2007, and 2008 Dr. Kang did not make similar findings, and as previously noted, there was no record of treatment of Plaintiff by Dr. Kang for back or neck or shoulder pain or other symptoms after March 2007. The ALJ was certainly entitled to consider whether Dr. Kang's opinion was supported by his own treatment records or by other objective medical evidence in the record.

In a related argument, Plaintiff contends that the ALJ was required to consider the specific "findings of diminished spinal mobility, abnormal spinal positioning, muscle spasms and tightness, tenderness, weakness, and constant pain" in the record because this evidence "supported those opinions" by Dr. Kang. Plaintiff's Opening Brief, at 20-21.

Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1995).

The ALJ acknowledged in the decision that Dr. Kang had treated Plaintiff in 2006, 2007, and 2008, that the physician's treatment notes included "few findings that would suggest such severe limitations," and that his records and other medical records of treatment of Plaintiff included mostly "subjective allegations of pain." (TR 330). Again, the ALJ reviewed the medical evidence, including Dr. Kang's records of treatment of Plaintiff, and found that those records and other medical evidence were inconsistent with Dr. Kang's functional assessment of Plaintiff's work-related abilities.

Plaintiff's vague reference to "various findings" on different pages in the medical record that purportedly show Plaintiff occasionally exhibited reduced range of motion and muscle spasms or that she complained of pain or weakness do not demonstrate probative evidence the ALJ did not consider or was obligated to expressly consider in the decision. The ALJ provided valid reasons supported by the record for giving Dr. Kang's opinion "little weight," and Plaintiff's argument is without merit.

Plaintiff contends that the ALJ did not consider probative evidence in the opinions of agency medical experts Dr. Krishnamurthi and Dr. Lynn. However, neither of these experts opined that Plaintiff was disabled, and neither of these physicians treated the Plaintiff. Dr. Krishnamurthi indicated in January 2007 that based on a review of the medical record to that date Plaintiff could sit for one hour, stand for one hour, and walk for one hour at a time, and she could sit for six hours, stand for 2 hours, and walk for 2 hours in an 8-hour workday. (TR 157). The physician further opined that Plaintiff could frequently lift up to 10 pounds and perform postural movements such as bending or squatting occasionally. (TR 157-158). This opinion was not based on a review of all of the medical evidence in the record, and the ALJ was not required to consider it.

Nevertheless, one of the jobs that the ALJ found Plaintiff could perform was her previous job as a receptionist. This job is typically performed, according to the VE, at the sedentary exertional level, and therefore the RFC assessment by Dr. Krishnamurthi is not inconsistent with the ALJ's finding that Plaintiff could perform this previous job. (TR 330, 403). For the same reasons, Plaintiff has not demonstrated that Dr. Lynn's RFC assessment,

which also described an individual capable of a restricted range of sedentary work, was probative evidence that the ALJ should have expressly considered. The ALJ did not err in failing to expressly consider these opinions.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before July 3rd, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 13th day of June, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE